# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SANJAY GULATI, SUSHANT GULATI, and SACHIN GULATI, | ) )  ) |
| Plaintiffs, | ) No. 17 C 7233 ) |
| v. | ) Hon. Judge Virginia M. Kendall ) |
| ALLIED FIRST BANCORP, INC., KENNETH L. BERTRAND, and JAMES MALONEY, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Sanjay, Sushant, and Sachin Gulati (collectively the "Gulatis") filed this seven-count suit against Defendants Allied First Bank ("Allied"), Kenneth L. Bertrand ("Bertrand"), and James Maloney ("Maloney") alleging claims of conversion, breach of contract, breach of fiduciary duty, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act[1] ("ICFA"), fraud, unjust enrichment, and accounting. (Dkt. No. 14.) The Gulatis seek punitive damages, disgorgement of fees collected by Allied, attorney's fees, and an order from the Court requiring Allied to conduct an accounting of Gulati funds. The Defendants filed a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 19.) For the following reasons, the motion to dismiss is granted in part and denied in part. [22].

## BACKGROUND

All of the facts derive from the Amended Complaint or relevant exhibits attached thereto, and are accepted as true for the purpose of deciding the motion to dismiss for failure to state a claim.

Sanjay, Sushant, and Sachin Gulati jointly operate a Mortgage Production Office ("MPO"), which serves banks that are unable to provide mortgaging services on their own. (Dkt.

---

[1] 815 ILCS 505/1, 2.

1

No. 14, ¶¶ 1-3, 12.) Allied is an FDIC-regulated bank located in Oswego, Illinois. (*Id.* ¶ 7.) Bertrand is the President and Chief Executive Officer and Maloney is the Chief Financial Officer at Allied. (*Id.* ¶¶ 8-9.) From April 2014 to July 2017, the Gulatis operated an MPO for Allied. (*Id.* ¶ 1.)

Under the operative contract (the "Agreement"), the Gulatis ran the MPO under Allied's name and provided a team of brokers and other staff to originate mortgages for Allied. (*Id.*) The Gulatis possessed exclusive control over the MPO and exercised sole responsibility over operation costs and expenses, including staff wages and the brokers' commissions. (*Id.*) The Gulatis originated all loans, processed all documents, and ensured all transactions closed. (*Id.* ¶ 22.)

To support the MPO operations, the Gulatis wired Allied funds to maintain an operating account, which became known as the Georgia-Gulati Account (the "Account"). (*Id.* ¶ 24.) The Gulatis used the Account to pay employee wages and salaries, taxes, fees, employee benefits, and other expenses. (*Id.*) Allied never contributed funds to the Account or provided the MPO with any financial or operational support. (*Id.* ¶ 25.) The Gulatis assert that the funds in the Account do not represent a general debt or obligation to Allied. (*Id.*) The only participation in the MPO by Allied consisted of receiving a fixed fee for every transaction closed. (*Id.* ¶ 26.) The remainder from each transaction stayed in the Account. (*Id.*)

The Agreement between the Gulatis and Allied was partially governed by a Team Manager Handbook, which required the Gulatis to maintain a minimum reserve in the Account. (*Id.* ¶¶ 27–28.) An addendum to the handbook, signed by the Parties in 2015, required the Gulatis to keep minimum reserve levels in the Account in order to cover direct costs, loan officer

compensation, overhead costs, and staff salaries. (*Id*.; *see also* Dkt. No. 14, Ex. A, at 2.) The addendum, attached as an exhibit to the complaint, includes the following provisions:

> "[Allied's] President and/or CFO will determine the amount to hold for any current and future compensation to Staff and MLOs in order to ensure timely payment of amounts due where appropriate. This will include but is not limited to salary/hourly/commissions/applicable over-time/benefits/matching payroll taxes."

(Dkt. No. 14, Ex. A, at 3.) And:

> "The minimum amount added to the reserve requirement upon separation for Early Payoff charges or Defaults from out Lenders/Investors (on files originated by the Team Manager or his/her staff) will be determined by the CFO and/or President. This will be held back for a period of no less than 120 days after the separation date."

(*Id*.) Furthermore, the addendum to the Team Manager Handbook permitted Allied to hold back reserve requirement funds for 120 days before returning them to the Team Manager:

> "After the 120 days has elapsed any amounts remaining (after payment of charges for EPOs and/or Defaults + any expenses paid on behalf of the Team Manager or Production Office) will be returned to the Team Manager. Expense reimbursement requests from remaining funds will be honored at the Bank President's discretion."

(*Id.*)

In May 2017, the Gulatis terminated their business relationship with Allied following a disagreement over the conduct of certain brokers working for the MPO. (*Id.* ¶ 2.) The Gulatis advised Allied and Bertrand of their decision on June 29, 2017, and proposed a 90-day wind-down period to allow for the completion of all pending transactions. (*Id.* ¶¶ 34–35.) The Gulatis also suggested that Allied hold $150,000 in the Account to cover all remaining transaction and reserve-related costs as provided for in the addendum. (*Id.*) They allege that $150,000 would have been more than sufficient to cover the minimum and additional reserve items for which funds were required. (*Id.* ¶ 36.)

In addition to the proposed wind-down period, the Gulatis requested that Allied return the funds in the Account, but Allied refused and cut off the Gulatis' access to the account completely. (*Id.* ¶¶ 37-38.) Allied prohibited them from viewing account activity, in spite of Sanjay Gulati's repeated requests to Bertrand and Maloney that he receive account permission (*Id.* ¶ 40-41.) Maloney did offer to provide daily reports of the wire transfers into the account, but Sanjay rejected the proposal as insufficient and unacceptable, and so this only occurred once. (*Id.* ¶¶ 42- 44.) Thus, the Gulatis allege that they are unable to ascertain the amount of funds owed to them. (*Id.* ¶ 47.)

The Gulati's made a final demand for the return of the funds in the Account on July 20, 2017, and Allied declined them access, adding that the Gulatis were only entitled to funds that make up their salaries, hourly wages, and discretionary bonuses. (*Id*. ¶¶ 48-49.) Allied additionally stated that "even if Sanjay Gulati had an entitlement to some of the funds in the Account – which Allied [] contends he does not – the issue is not ripe given the outstanding payments and liabilities associated with the account." (*Id.*, Ex. B, at 3.)

Ever since the split, the Gulatis claim that Bertrand is trying to recruit members of the Gulati MPO staff to work for Allied. (*Id*. ¶ 52.) In doing so, the Gulati's claim that Bertrand shared information about the Account with those individuals, such as the balance, margins, transfer amounts and costs for various closings, and that Bertrand is using private, confidential, and proprietary information about the Gulatis in order to interfere with their ability to compete against Allied. (Id. ¶¶ 53-54.)

The Gulatis assert claims for breach of fiduciary duty and ICFA violations (Counts III & IV) against all of the Defendants, as well as claims for conversion, breach of contract, common

law fraud, unjust enrichment and equitable relief in the form of an accounting of Gulati funds held against Allied (Counts I, II, V, VI & VII). *See, generally* (Dkt. No. 14.)

## LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir.1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir.1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id*. at 556.

## DISCUSSION

The Plaintiffs' complaint asserts seven claims: (1) conversion; (2) breach of contract; (3) breach of fiduciary duty; (4) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (5) common law fraud; (6) unjust enrichment; and (7) accounting – each of which the Court addresses in turn.

### I. Conversion of Gulati Funds Held by Allied

To prevail under Illinois law on a claim of conversion, the plaintiff "must allege: (1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate

possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *General Motors Corp. v. Douglass*, 565 N.E. 2d 93, 96-97 (Ill. App. 1990); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Wilkins-Lowe & Co.*, 29 F. 3d 337, 340 (7th Cir. 1994); *G.M. Sign, Inc. v. Elm Street Chiropractic, Ltd.*, 871 F.Supp. 2d 763, 768 (N.D. Ill. 2012) (Kendall, J.) (denying motion to dismiss on plaintiff's claim for conversion because the amount in question was nominal). Generally, the mere assertion of a right to money is insufficient to support a conversion claim, unless "the money at issue can be described as 'specific chattel,'" *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) (quoting *In re Thebus*, 108 Ill. 2d 255, 483 N.E. 2d 1258, 1260 (Ill. 1985)). An asserted right to money will only support a claim for conversion if the money at issue can be described as "a specific *fund* or specific money in coin or bills." *Id.* (emphasis added) (quoting *Mid-America Fire & Marine Ins. Co. v. Middleton*, 468 N.E.2d 1335, 1339 (Ill. App. 1984)). Moreover, it must be shown that the relevant money belonged to the plaintiffs at all times and that the defendant converted that money to its own use. *Id.*

Here, the Plaintiffs deposited all of the funds into and controlled the Account prior to June 29, 2017, at which point they terminated the relationship with the Defendants. Allied never contributed any funds to the Account. Based on the Gulatis suggested 90-day wind-down period and the reservation of $150,000 in the Account for wind-down purposes, they now allege that Allied converted the remaining funds for its own benefit at the Gulati's expense. But the Agreement provided for a 120-day holding period, at which point Allied was required to return any remaining funds, and Allied has since continued to deny the Gulatis access. Thus, what Allied refused to return to them is beyond the scope of what was necessary for continued operating funds. As the 120-day period under the contract has now passed, the Gulatis claim

they have an absolute and unconditional right to the immediate possession of the property – that being the nonessential funds they placed into the Account with Allied. The complaint alleges that the Gulatis made adequate demands for possession of the funds. Those demands occurred on June 29 and July 20, 2017. Although Allied contests the ownership of the funds in question, the facts within the complaint are sufficient at this stage to permit the Gulatis' claim for conversion to proceed against because it is plausible that Allied is holding funds beyond the scope of the terms within the Agreement that belong to the Gulatis. As such, the Defendants' motion to dismiss the count for conversion is denied.

## II. Breach of Contract by Allied

A breach of contract under Illinois law requires a plaintiff to prove the existence of an offer and acceptance, consideration, definite and certain terms, performance by the plaintiff of all required conditions, a breach of those terms by the defendants, and damages. *Wigod v. Wells Fargo Bank, N.A.* 673 F.3d 547, 560 (7th Cir. 2012); *see also Von Der Ruhr v. Immtech Intern., Inc.*, 326 F.Supp. 2d 922, 926 (N.D. Ill. 2004) (requiring "(1) a contract with definite and certain terms existed between the parties; (2) the plaintiff performed its obligations under the contract; (3) the defendant breached its obligations under the contract; and (4) the plaintiff suffered damages as a result").

Applying this approach, the Gulatis allege that they ran an MPO under Allied's name and employed a team of brokers and other staff to originate mortgages for Allied. They further identify the existence of an Agreement, a Team Manager Handbook, and an addendum to the Handbook as the contract and binding terms underlying the Agreement. For its part, Allied concedes to the existence of a valid Agreement in its reply brief. (Dkt. No. 30, at 3.) The Gulatis also allege significant performance of their obligations under the Agreement, namely

7

operating an MPO for Allied for a period of more than three years, to which they complied with the terms of the Agreement and both parties to the Agreement turned a considerable profit. The issue then turns on the terms related to what occurs in the event of a separation.

The Gulatis identify and attach to their Amended Complaint the addendum to the Team Manager Handbook that discusses the terms related to funds held by Allied in the event of separation. Under the addendum and as discussed above, the contract permitted Allied to hold back reserve requirement funds for 120 days before returning them to the Team Manager (the Gulatis). Next, they claim that their relationship with Allied was terminated on June 29, 2017, at which time the funds in the Account exceeded the necessary reserve minimum. They further allege their willingness to permit Allied to hold $150,000 in order to maintain compliance with the Agreement for the purpose of paying salaries and for the wind-down related operations. Thus, the Gulatis believe that the Agreement required a return of their funds, less wind-down related costs, being held in the Account. As that did not occur, the Gulatis allege that the failure to return said funds constitutes a breach of the Agreement, which caused them harm by restricting their access to $1.2 million in funds used in the day-to-day operations of their current business pursuits. Based on these facts, taken as true for the purpose of Allied's motion, the Plaintiffs have sufficiently pled a claim for breach of contract and the Defendant's motion to dismiss the count for breach of contract is denied.

### III. Breach of Fiduciary Duty

In Illinois, a breach of fiduciary duty requires a plaintiff to allege the existence of a fiduciary duty, a breach of that duty, and that the breach proximately caused the injury of which the plaintiff complains. *Gross v. Town of Cicero, Ill.*, 619 F. 3d. 697, 709 (7th Cir. 2010) (citing *Neade v. Portes*, 739 N.E. 2d 496, 502 (Ill. 2000)). However, the "parties to a contract are not

each other's fiduciaries." *Original Great Amer. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992).

The Gulatis claim that Allied possessed complete dominion and control over funds held within the Account, thereby creating a special fiduciary relationship. They also claim that Allied breached this duty be refusing to turn over the funds held in the Account once the Gulatis terminated the relationship and requested a majority of the remaining $1.2 million upon the conclusion of the suggested 90-day wind-down period. However the possession of the Gulati funds by Allied, as well as provisions permitting those funds to be held by Allied for a specified period of time were entirely defined by the Agreement between the Parties. Under that Agreement, specifically the addendum to the Team Manager Handbook, the Gulatis contractually agreed to permit Allied to hold discretionary funds in the Account for up to 120 days.

Because there is no fiduciary duty flowing directly from the creation of a contract between two parties and the Gulati's fail to identify facts sufficient to prove the existence of a fiduciary duty other than the existence of a contract, they fail to plead a claim for breach of that duty. Accordingly the count alleging a breach of fiduciary duty is dismissed without prejudice. Although the count alleging a breach of fiduciary duty is not sufficiently pled, this does not remove from consideration the potential failure to comply with the terms of the Agreement between the parties in that the 120-day period specified within the Agreement has since expired and Allied has yet to return any funds; no matter the existence of any factual dispute regarding when that tolling period began to run.

## IV. The Illinois Consumer Fraud and Deceptive Practices Act

Next, the Gulatis claim that Allied violated the Illinois Consumer Fraud and Deceptive Practice Act. To succeed on a claim alleging a violation of ICFA, a plaintiff must allege: (1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) the plaintiff suffered actual damage; and (5) the damage was proximately caused by the deception. *Geschke v. Air Force Ass'n*, 425 F. 3d 337, 345 (7th Cir. 2005) (citing *Oliveira v. Amoco Oil. Co.*, 776 N.E. 2d 151, 160 (Ill. 2002)); *see also Wigod*, 673 F.3d at 574. However, a party must allege unfair and deceptive conduct "distinct from the alleged breach of a contractual promise" to prove a claim under ICFA. *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 400 (7th Cir. 2011). Generally, Illinois courts have rejected ICFA claims where a plaintiff alleges the mere failure to enforce a contractual obligation as the basis for proving consumer fraud. *Shaw v. Hyatt Intern. Corp.*, 461 F.3d 899, 901 (7th Cir. 2006) (citing *Avery v. State Farm Mutual Auto. Ins. Co.*, 835 N.E. 2d 801, 844 (2005) ("a breach of contractual promise, without more, is not actionable under the Consumer Fraud Act")).

As the basis for their ICFA claim, the Gulatis claim that Allied deceptively invited them to deposit large sums of money into the Account held by Allied with the intent of never returning that money back to the Gulatis in the event of a separation. They go on to claim that this is exactly what happened and state as their current damages the fact that Allied refuses to return funds placed into the Account. However these facts do not rise to the level of "unfair or deceptive conduct" given the fact that the Agreement between the Parties is clear on how funds will be held in the event of a separation. As noted above, the Agreement permits Allied to hold funds for various purposes beyond the severance of a working relationship between it and the

Gulatis. Further, the Agreement is clear that these funds can be held for up to 120 days, and also that the amount held is at the discretion of Allied's President and/or CFO.

Even in construing the facts as alleged by the Gulatis in their Amended Complaint as true, they do not suggest the existence of a deceptive practice on the part of Allied and so the count alleging a violation of ICFA is dismissed without prejudice.

**V.    Common Law Fraud, Unjust Enrichment, and Accounting**

The Gulatis argue the underlying counts for common law fraud, unjust enrichment, and accounting "in the alternative," in the event that Allied disputes the existence of an enforceable contract.  But the Parties are in agreement as to the existence of a valid contract via the Agreement and accompanying Team Manager Handbook and addendum.  *See* (Dkt. No. 28, at 9, 12; Dkt. No. 30, at 3.)  Accordingly, Counts V, VI, and VII are dismissed with prejudice because the Parties do not dispute the existence of a valid contract.

## CONCLUSION

For these reasons, the Defendants' motion to dismiss (Dkt. 22) is granted in part and denied in part. Counts III and IV are dismissed without prejudice and Counts V, VI and VII are dismissed with prejudice.

                                                                        _____
                                                                        Hon, Virginia M. Kendall
                                                                        United States District Judge

Date: February 16, 2018

11